Please the court. Mark Griffin of Keller Rohrbach for the Plaintiffs with me at counsel table is Gretchen Freeman Capio also of Keller Rohrbach. When it comes to protecting employees private information Starbucks has engaged in a pattern of behavior that demands injunctive relief. Plaintiffs are seeking such relief in addition to damages in this case. Plaintiff's complaint alleges that in 2006 Starbucks lost a laptop containing personally identifying information or PII including the unencrypted names and social security numbers of roughly 60,000 employees. The complaint also alleges that a few years ago Starbucks was the subject of an identity theft ring that included one or more of its employees who accessed a computer with the intent of stealing employee information. This lawsuit arises from a third incident of unauthorized disclosure of Starbucks PII the theft of a laptop that occurred in or near Seattle in October 2008. That laptop contained the unencrypted names addresses and social security numbers of roughly 97,000 employees. After this third theft Starbucks recognized that its employees had been injured. It sent a letter 20 days after the theft and recommended to its employees that they undertake certain mitigation efforts. It offered plaintiffs a remedy of a one-year low-level credit monitoring service from Starbucks. This remedy was inadequate. It should be noted that Starbucks has not challenged the district court's ruling that the plaintiffs have already suffered injury in the form of an increase in their risk of identity theft and that this injury satisfies Article III standing. The district court stated and I quote, at this stage of the litigation however the court relies solely on establish a presently compensable injury in addition to having their PII compromised. Counsel just so we can cut to the nub here, let's assume for a moment you've got Article III standing. Your problem seems to be under Washington law. Yes. Under the negligence count and under the contract count. Can you address those issues please? Certainly your honor. First the implied contract count. Plaintiffs contend that they've adequately pled facts in a course of dealing giving rise to a contract implied. Is this a bilateral contract or a unilateral contract? What is it? A unilateral contract your honor. And what are the terms? The terms are essentially contained in the standards of business conduct. I've read those and I don't see how you get a contract out of that. Well it's a promise by Starbucks that it will keep confidential information in a. What specific language are you relying upon to derive that conclusion? I'm referring to ER 0256. What does that say? The heading is intellectual property and proprietary information. The subheading is confidential information. And it says that's what it is, but it doesn't say that they're going to protect it until hell or high water does it? Well what it does say is that partners, employees of Starbucks, will obtain proprietary, non-public and proprietary information during the course of their employment. And that such material is I hear what you're saying. You're talking more about the the negligence aspect of it when you get to that. Whether they did store it the proper way. But let's take the contract portion first. Well this is. Where is it? Under contracts and remember Hadley versus Baxendale and all of its progeny, you've got to show some reasonable, some anticipated damages that will flow from Starbucks obviously didn't intend for this laptop to be stolen. Virtually every business that's ever been around that's had that kind of information that had it stolen or misplaced or something, including the CIA and the FBI by the way. Are we to construe under the contract count that Starbucks agreed that no such thing would happen and therefore there's a breach of contract? No your honor. What we're to construe is that they've made a promise to the employees that when Starbucks took possession of this PII, which was proprietary information, that they were promised that they would store it in a secured place. Did they make that promise to the employees? Where do you read that? It's in the standards of business conduct, a publication that the employees ever read that? Is there any allegation that any of the employees ever read any part of those contracts? Well your honor, where are you in the standards of conduct? What page? The court record is ER 0256. The heading is intellectual property and proprietary information. And where there are you reading? What specific language? In the middle section there's a subheading called confidential materials. And it says one, should be stored in a secured place. And our allegation is by taking this proprietary information, an employee list that contains PII, that by putting it onto a laptop computer that is unencrypted, that is not password protected, that they are breaching their promise to store the material in a secure place. We're still on the promise question. I'm looking for you to point to language that says we promise to do this. I don't see it. Well this describes the business standards, the Is it point one? Yes, it is point one. I don't see the word promise. I don't see the word will. I don't see the word commit. I don't see, I see should. Should is sort of an aspirative. You know, it's a should. It's quite indefinite. Is that the best you can do in terms of a promise? Well, I think beyond the words of this standards of business conduct that I'm referring to, I also point the court to the conduct of Starbucks itself. What did Starbucks do after, 20 days after this theft occurred? They can do lots of stuff that is not, that they do by contract. But I think it's... They can feel that, you know, they want to be generous or they want to be nice or that this is good policy in keeping up employee morale. There's lots of things they can do, but you're starting with a premise that these standards of business conduct is something that This is not like a manual. This is not like an orientation packet that's given to employees when they walk in. This is not like a written policy that says this is what we commit. You know, we've seen all those cases. What you're pointing to is something that is not at all clear as directed to employees at all. Is this directed to employees? Is this handed to employees? Well, I think a fair interpretation of this is that, you know, the proprietary information includes employee lists. Right, but this particular provision is a direction to the employees of Starbucks, not an obligation that Starbucks is assuming on behalf of its management. That's correct. So how is it a contract? It's telling the employees who take custody of this proprietary information how they are... My prior point, Your Honor, is that although people can, you know, do things out of their goodwill and without obligations, in this case, what happened is that Starbucks undertook and wrote this letter to employees, and we believe at a pleading stage of the case that we're entitled to fair inferences from the facts that we allege, and we allege that Starbucks sent this letter and it offered, it advised its employees about what to do to mitigate their damages, and it offered this what we believe to be inadequate credit protection, and that a part of those facts is that Starbucks is understanding that they have a contractual obligation to protect their employees' PII. With respect, I don't see how that follows. If somebody, as a matter of corporate policy, decides they're going to mitigate any problems that employees have, how does that in any way imply that they understood there was a contractual obligation to the matter of employee relations? This is good business. Let's, you know, we've got some people here who have some concerns. Let's provide this on a voluntary basis. But that doesn't mean, they're not obligated to do that. It doesn't mean there's a contract, does it? Well, when, you know, we've pointed to specific language in their own, you know, adhesive documents that weren't negotiated. We've cobbled together three different documents, disparate documents, I might add, to come up with what you believe is an implied contract. It's Hornbook law, as you know, that you've got to have all those four parts of the contract, and I don't see those here. I really don't. And I especially don't see a promise to the employees to do what you say it says. The chief judge has just asked you to but not able to indicate any such thing. I suggest maybe we ought to go to your tort claim. I don't think your contract claim flies, frankly. Well, let me say one final thing on the contract claim. We don't have to have a writing at all. It's not going to be oral, but you've got to have an agreement on the part of both parties that they understand to be a contractual obligation. Well, and I would submit to the court that if you look at what happened in this case, and I that maybe Starbucks did this out of the generosity of its heart, but I believe that what we will find, if we're allowed to pursue discovery, is that Starbucks understood that it had an obligation to keep this information confidential, and I believe that this standards of business conduct embody that agreement, and that they breached it, and that's why they felt compelled to, you know, send out this offering letter. Now, with... We got your point there. Why don't you try the tort claim. With respect to the negligence claim, plaintiffs believe that they have adequately pled a prima facie case of negligence under Washington law, which How do you answer, and I want to say this case correctly, Gazeeha versus Nicholas, Jerns Company, and Sorenson versus Raymark Industrial Incorporated, both Washington cases that indicate that the mere danger of future harm unaccompanied by present damage will not support a negligence claim? Well, Your Honor, what we contend is that to make out a prima facie case of breach, causation, and injury, and as I noted in my opening remarks, the district court has already found that there was a compensable injury in that case. That's for article 3 standing purposes, and that may be different than Washington tort law, right? Well, the way I view the injury element is that it's, you know, the impact, the fact of damage, the injury that's occurred, and I think that that is, in essence, the same finding as required for article 3 standing, and once we meet those elements for a prima facie case of negligence, then Which one of the plaintiffs has alleged present damage other than, in quotes, generalized anxiety and stress about the risk of future identity theft? I don't think you can separate that out, necessarily. The district judge found that allegation to be compelling. It's included in his article 3 standing discussion. Here, you know, plaintiffs have had to go out and buy If we disagree with you about the equality of article 3 standing and Washington state negligence law elements, are you out of luck? Is there anything more you can give us that qualifies under the Washington negligence law standard? Well, I think that the fact that, for example, one of the plaintiffs, Joseph Lawley, has had to go and buy this credit monitoring service. He didn't have to go buy it. He bought it, and the company provided credit monitoring service for a year. Did it not? I think it was Equifax or something like that. He chose to buy more. Nothing wrong with that. He chose to do that. And it's not on the record, but Laura Crotter has, you know, the year has passed now, and she's, you know, continuing at $9.99 a month to buy Chase credit monitoring services. Do you have such a service yourself? I've never been the victim. No, but I'm just saying, do you have it? Personally, I do not pay for it. I bet you a lot of people do. They've never even gone to Starbucks. It's a pretty common thing, isn't it? People want it. They're worried about credit theft, identity theft. They want to monitor their credit. They want to be sure that no one has stolen it. Pretty normal thing, but it has nothing to do with Starbucks. Well, I don't know how common it is, Your Honor, but I do know that these plaintiffs purchased the service because their PII was stolen, and it was stolen. 97,000 employees were affected by this. Do you have any idea how many of those 97,000 people have suffered identity theft that's traceable to this? Do you make any allegations to that effect? Well, Your Honor, we do allege that one of the plaintiffs, someone tried to open up a bank account in their name. And do we know that that was as a result of the stolen computer? The Judge Jones made an explicit finding that it was, I forget the exact words of the order, but that it was on the pleading stage of the case where we're at, that it was reasonable to conclude that that was as a consequence of the theft that was part of his ruling. And I would alert the court, once you establish, once we're able to allege the prima facie elements for a negligence claim under Washington law, if you look at the Duncan versus Northwest Airlines case, it says that a, in that case, medical monitoring can be a remedy to redress the injury cause that was, is part of that negligence claim. Is that a Washington case? It's out of the Western District of Washington. It's a federal case. It's interpreting Washington law? Yes, Your Honor. It's a 302 Federal Rules Decision 601. And, but that, but doesn't that very same case say that the Washington Supreme Court requires plaintiffs to show a present existing injury before pursuing a negligence based cause of action? Well, Your Honor, I, I, all I can do is, is quote to you what the district judge said in, in making, in making the ruling in this case. And that is that, I'm asking what you have established, what Duncan says. You quoted Duncan and I'm asking you whether Duncan says what I just quoted. I believe it does, Your Honor, but I believe that we've met that requirement because the district judge, which Starbucks has not take quarreled with at all, nowhere in their briefs, do they challenge the ruling, the, the, the established a presently compensable injury. I think that that finding is adequate for us to meet the injury requirement under the elements for negligence claim. And once, once we're established that, then Duncan kicks in and we can achieve a remedy of, in that case it was medical monitoring, but I think by analogy, credit monitoring is the same sort of, of creature that, that you're looking to see if people are taking this PII and, and, and you know, affecting your credit. Thank you. Thank you, Your Honor. Good morning. May it please the court. Carl Quackenbush representing Starbucks Corporation. Good morning, Mr. Quackenbush. Is there anything you've heard this morning that's not adequate to address in your brief? Uh, not that I know of, Your Honor. Okay. Thank you. Okay. Thank you. Cage Asagi will stand submitted.
judges: Kozinski, Thomas, Smith M.